**In re Petition for DISCIPLINARY ACTION AGAINST James H. SCHAEFER, an Attorney at Law of the State of Minnesota.**

**No. C1–86–2045.**

Supreme Court of Minnesota.

May 20, 1988.

Thomas C. Vasaly, Asst. Director, Office of Lawyers Professional Responsibility, St. Paul, for appellant.

James H. Schaefer, Hutchinson, pro se.

PER CURIAM.

The director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent James H. Schaefer in December 1986. Subsequently, in June 1987, the director filed a supplemental petition. Respondent filed an answer denying the allegations of the first petition, but did not answer the second petition. Therefore, the allegations in the supplemental petition are to be deemed admitted pursuant to R.Law.Prof. Resp. 13(c).

On October 7, 1987, the matter came on for hearing before a referee appointed by this court. Respondent appeared at the hearing *pro se.* The referee issued his findings of fact, conclusions of law, and his recommendation for indefinite suspension on November 2, 1987.

On November 30, 1987, this court issued an order that respondent submit a brief within 30 days. Respondent failed to respond in any way until his appearance at oral argument. The director filed a brief requesting that the court affirm the indefinite suspension recommended by the referee. We affirm the recommendations of the referee.

The petition alleged and the referee's findings established nine separate bases for discipline. The allegations in Counts I–II were contained in the initial petition filed December 3, 1986. The allegations in Counts III–IX were contained in the supplemental petition filed June 10, 1987.

Neither respondent nor the director ordered a transcript. Thus, the referee's findings of fact and conclusions of law are conclusive pursuant to R.Law.Prof.Resp. 14(e). The referee's findings, which generally substantiated the allegations of the petition, are summarized below.

*Count I—Teigland Estate*

■ Respondent was retained to represent Brian Teigland, the personal representative for the estates of his parents, Jordan A. and Ona R. Teigland, in 1981. Respondent failed to inform Teigland regarding penalties for failure to request extensions of time and/or payment of federal and state estate taxes. He did not file timely requests for extensions of time for filing or paying Minnesota or federal taxes. Consequently, substantial penalties and interest charges were assessed against the estate.

Respondent did not respond to notices from the Minnesota Department of Revenue regarding the penalties and did not notify Teigland of the notices. After Teigland was contacted by the Department of Revenue in 1985, respondent falsely stated that he had written to the department. In 1986, respondent told Teigland that he would appeal the department's denial of an abatement of penalties and interest for either estate. He did not appeal and the time for an appeal has expired.

The estate was also assessed interest charges of $8,379.06 in 1983 for failure to pay estimated taxes in 1982. In September 1987, after Teigland commenced a civil action, respondent stipulated that he would pay $13,723.44 by February 11, 1988, or a judgment would be entered in the amount of $19,898.44. At the time of the referee hearing, respondent had paid nothing to Teigland.

Respondent did not file final accountings in probate court before closing the estates. He also failed to turn over necessary documents for 5 months after repeated requests by Teigland's new attorney and for over 1 month after court order.

Respondent's neglect of client matters occurring prior to 1985 violated Minn.Code Prof.Resp. DR 6–101(A)(3), DR 7–101(A). The conduct occurring after 1985 violated Minn.R.Prof.Conduct 1.3, 1.4, 1.16(d), 2.1, 8.4(c).

*Count II—Non–Cooperation With Investigation*

Respondent failed to respond to repeated requests for information by ethics investigators regarding the Tiegland matter. He did not attend either the prehearing meeting or the panel hearing in 1986 despite being specifically advised that one panel

member would travel from Crookston to the hearing in St. Paul.

Respondent's failure to cooperate violated Minn.R.Prof.Conduct 8.1(a)(3) and R.Law.Prof.Resp. 25.

*Count III—Jorgensen Estate*

In 1981, Audley Jorgensen petitioned to have respondent appointed conservator of the estate of his father, John Jorgensen, age 85. Respondent did not file the required bond for over 1 year despite several notices from the court. He failed to file an inventory of the estate in a timely manner as required by statute. Respondent breached his fiduciary duties regarding the estate's assets (appropriating $912 without authority and failing to deposit funds in interest-bearing accounts). Respondent sold Jorgensen's homestead to the City of Hutchinson in 1983 while he was acting as city attorney, thereby representing both parties in the transaction. After Jorgensen's death in 1984, respondent failed to file the 1983 annual account and the final account despite repeated instructions from the probate court. He then failed to produce necessary conservatorship records, delaying an approval of the final account.

Respondent failed to respond promptly to requests for information from the attorneys for Jorgensen's surviving children even after court orders until he was threatened with contempt citations.

Respondent continued to retain Jorgensen's social security checks which he received for 1 year after Jorgensen's death. He has failed to return funds improperly advanced to Audley Jorgensen or to make restitution for lost interest.

Respondent's conduct occurring prior to 1985 violated Minn.Code Prof.Resp. DR 1-102(A)(4), (5); DR 5-105(B); DR 6-101(A); DR 7-101; DR 7-106(A), (C)(7); DR 9-102(B)(3); DR 9-103(C) and the conduct occurring after 1985 violated Minn.R.Prof. Conduct 1.15(b)(3), 3.4(c), 8.4(c), (d).

*Count IV—Klammer Estate*

In 1986, respondent represented Patricia DeGrote regarding her father's estate. In 1987, he ignored repeated requests by DeGrote's new attorney for her file for 8 months. At the disciplinary hearing before the referee, respondent falsely testified that he had mailed the file earlier that week. However, it was actually mailed after the hearing.

Respondent's conduct violated Minn.R. Prof.Conduct 1.15(b)(4).

*Count V—Callaghan & Co. Matter*

While acting as Hutchinson City Attorney from August 1984 to July 1985, respondent ordered and received law books in the amount of $1,237.07 on the city's behalf. He failed to forward the bills to the city and did not inform the city that it had been sued for non-payment, causing a default judgment to be entered against himself and the city. Respondent then provided false explanations to the city and to the director.

Respondent's conduct violated Minn.R. Prof.Conduct 1.3, 1.4, 4.1, 8.1(a)(1).

*Count VI—Hettver Matter*

In 1986, respondent represented Roger Hettver in a marriage dissolution proceeding. Respondent ignored the court's repeated instructions to draft an order regarding payment of attorney fees. As a result of his actions, Hettver was assessed an additional $75.

Respondent's conduct violated Minn.R. Prof.Conduct 1.3, 3.2, 3.4(c), 8.4(d).

*Count VII—Continuing Legal Education Matter*

Respondent practiced law while under suspension for non-compliance with CLE requirements from November 19, 1985, until he was reinstated on December 12, 1986.

Respondent's conduct violated Minn.R. Prof.Conduct 5.5(a), R.Law.Prof.Resp. 26 and the order of this court dated November 19, 1985.

*Count VIII—Non-Payment of Attorney Registration Fee Matter*

Respondent practiced law for approximately 2 months while under suspension for failure to pay his attorney registration fee.

Respondent's conduct violated Minn.R. Prof.Conduct 5.5(a), R.Law.Prof.Resp. 26, and Rule 3 of the Supreme Court's Rules for Registration of Attorneys.

*Count IX—Additional Non–Cooperation*

Respondent failed to respond in a timely manner to requests for information from the director's office regarding Counts III–IX.

Respondent's failure to cooperate violated Minn.R.Prof.Conduct 8.1(a)(3) and R.Law.Prof.Resp. 25.

The referee, based on his findings of fact and conclusions of law, recommended indefinite suspension. The referee further recommended that respondent be reinstated only through the procedures of R.Law. Prof.Resp. 18 with no right to submit a petition for reinstatement for at least 6 months.

Because the referee's findings of fact and conclusions of law are conclusive in this case, the only question presented is whether the referee's recommendation for discipline is appropriate. In general, the court has considered a referee's recommendation as being entitled to great weight. *In re Gubbins,* 380 N.W.2d 810, 812 (Minn. 1986). However, the court has also recognized that it possesses the final responsibility for determining the appropriate sanctions. *In re Fling,* 316 N.W.2d 556, 559 (Minn.1982).

In making our own assessment of appropriate sanctions, we have considered the primary purpose of attorney discipline to be protection of the public. *In re Serstock,* 316 N.W.2d 559, 561 (Minn.1982); *In re Hanson,* 258 Minn. 231, 233, 103 N.W.2d 863, 864 (1960). However, the discipline selected should also serve to deter future misconduct. *In re Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983). To effectuate these purposes, the court has weighed the following: (1) the nature of misconduct, (2) the cumulative weight of the disciplinary violations, (3) the harm to the public, and (4) the harm to the legal profession. *In re Smith,* 381 N.W.2d 431, 435 (Minn.1986).

In the present case, the referee found that respondent had committed numerous disciplinary violations while representing clients, some of which caused substantial harm to his clients, over an extended period of time. In addition to the disciplinary violations related to client representation, the referee found that respondent failed to cooperate with the director's office in its investigation into the complaints. Subsequently, respondent denied some allegations in the initial petition, but failed to answer the supplemental petition. Based on his consideration of the evidence at the hearing, the referee recommended indefinite suspension with a further recommendation that respondent not be permitted to apply for reinstatement for at least 6 months.

The director, in his brief, urges this court to adopt the referee's recommendations. The director contends that the recommended discipline is consistent with that imposed by the court in prior cases involving similar facts. The director further points out that, especially when considered in the aggregate, respondent's violations are as serious as those previously held to warrant suspension or disbarment.

The director points out the acts of misconduct relating to client matters and maintains that the court's precedents support suspension (or even disbarment) as an appropriate sanction. *See, e.g., In re Weyhrich, supra* (repeated neglect of client matters, failure to communicate with clients and non-cooperation with investigation warranted disbarment); *In re Pyles,* 421 N.W. 2d 321 (Minn.1988) (misappropriation of funds, misrepresentation to clients, acting with conflict of interest warranted indefinite suspension).

Respondent did not order a transcript of the hearing and failed to file a brief in this matter. Thus, until oral argument, the court had received no explanation of any underlying reasons for respondent's behavior, no evidence of any possibly mitigating factors, and, indeed, no request for a reduced sanction.

At oral argument before this court, respondent appeared on his own behalf and argued for a lesser sanction, namely, a 90–day suspension and supervised probation along with other recommended conditions that he was willing to accept. He claimed to have suffered from moderate to

severe depression and to be receiving treatment from a clinical psychologist. He also claimed that all client losses have been reduced to settled amounts and that he is undertaking an attempt to make full restitution.

However, we find it a little late for respondent to attempt to use his alleged illness as an excuse for his conduct. We have repeatedly said in earlier cases that a claim of illness or disability is one where respondent shall have the burden of proof and that such disability could result in reduced sanctions only if there were extreme extenuating circumstances. *See, e.g., In re Weyhrich, supra. See also In re Smith, supra.* Here, respondent comes into court without being represented by counsel, without ordering a transcript so that the court could read the responses to questions posed to the respondent, and after failing to answer the supplemental petition or to file a brief before this court. Although respondent claims to have sent reports from a psychologist to the director's office, those reports are not part of the official record. Thus, we have absolutely nothing before us except respondent's oral plea for this court to grant leniency.

Courts of law cannot operate on such evidence. Courts must operate on proven facts and must use the written record to justify their decisions. Based on what record there is, this court is forced to conclude that the referee was correct in finding respondent to be presently unfit to represent clients or to practice law in this state. It will be respondent's duty to prove to the satisfaction of the director and to this court that he will be a candidate for reinstatement in the future. In the meantime, he must be separated from the public for its protection, and suspension is the only alternative to complete disbarment.

Accordingly, it is ordered:

1. Respondent is suspended indefinitely from the practice of law in this state.

2. Respondent will not be eligible to apply for reinstatement for a period of at least 6 months from the date of this order.

3. In any petition for reinstatement, respondent shall apply through the procedures of Rule 18 of the Rules on Lawyers Professional Responsibility and shall further:

a. Provide supporting data outlining a plan for complete restitution for all financial losses to clients; and

b. Supply adequate medical data that will indicate that he is not subject to any health problems that would prevent him from practicing law capably and honestly.