In re Petition for DISCIPLINARY ACTION AGAINST Thomas E. MOORE, an Attorney at Law of the State of Minnesota.

No. CO–74–45110.

Supreme Court of Minnesota.

Nov. 10, 1988.

Jack S. Nordby, St. Paul, for appellant.

Thomas C. Vasaly, First Asst. Director, Office of Lawyers Professional Responsibility, St. Paul, for respondent.

PER CURIAM.

■ This matter comes to us on the petition of the director of the Lawyers Professional Responsibility Board for disciplinary action against respondent, Thomas E. Moore, a sole practitioner admitted to the Minnesota bar in 1952. Respondent failed to serve and file timely answers to the petition. The allegations of the petition are, therefore, deemed admitted. Rule 13(c), Rules on Lawyers Professional Responsibility (RLPR). A hearing was set before this court for the purpose of considering the imposition of appropriate discipline. We now conclude that respondent should be suspended indefinitely with conditions for reinstatement.

This is the third petition for disciplinary action in this rather dismal history of client neglect and noncooperation with the disciplinary process. The present petition, served on May 13, 1988, while respondent was on probation as the result of an earlier disciplinary proceeding, alleges two counts of client neglect. Respondent was retained in November 1983 to represent a client in marital dissolution proceedings. Respondent failed to respond either to requests for or a motion to compel discovery. The district court ordered response to discovery and assessed costs of $125. Respondent did not comply with the court's order until he was served with an order to show cause why his client should not be held in contempt for noncompliance with the discovery order. Respondent then informally provided some of the requested information, and the hearing on the order to show cause was cancelled.

Following trial of the matter, the district court ordered distribution of the marital and non-marital assets and directed respondent's client to pay the sum of $87,650 to his former spouse. The distribution was based on an agreed-upon list of the parties' assets. When respondent learned that an error in the list had resulted in an overstatement of his client's assets, he took no action except to call the error in the judgment to the attention of opposing counsel, who disputed the claim of error. Respondent did not advise his client of the consequences of levy of execution, and as a result of the sheriff's levy, the client's former spouse recovered the full amount of the erroneous judgment and the client was required to pay, in addition, the sheriff's commission in the amount of $2,676.16.

Respondent arranged for another attorney to seek amendment of the judgment,

and in December 1985 an order issued reducing the amount of the judgment against respondent's client by $13,780. The client repeatedly requested respondent to pursue recovery of the overpayment, but although respondent promised to do so, he did nothing. Respondent ignored associated counsel's inquiry as well.

By letter of April 21, 1986, opposing counsel offered payment to respondent's client of $13,780 plus some interest in settlement of the matter. Respondent failed to respond to the offer or to counsel's subsequent inquiry.

Although notified that a receiver held proceeds realized from the sale of marital assets in an amount in excess of his client's overpayment, respondent did not interpose a claim and the proceeds were divided between the client and his former spouse without reference to the overpayment. The order of distribution reserved $4,470 pending negotiations regarding claims made by respondent's client for reimbursement of various expenses. Respondent failed to pursue his client's claim against the reserved funds, which still awaited distribution when these proceedings were instituted.

In April 1987 respondent commenced an independent action for recovery of the overpayment without first seeking relief in the family court. Moreover, the judgment which gave rise to the overpayment had never been amended pursuant to the order of December 3, 1985. After service of the summons and complaint, no further action was taken until March 1988 when the client retained other counsel.

Respondent's conduct prior to September 1, 1985 violated the Minnesota Code of Professional Rules DR 6-101 (failure to act competently) and DR 7-101 (failure to zealously represent client). His conduct after August 31, 1985 violated the Minnesota Rules of Professional Conduct 1.1 (lawyer shall provide competent representation), 1.3 (lawyer shall act with reasonable diligence), 3.4(c) (lawyer shall not knowingly violate rules of tribunal), and 8.4(d) (lawyer shall not engage in conduct prejudicial to administration of justice).

The second count of this petition arises out of respondent's retention to pursue an insurance claim based on fire damage to the client's building. Respondent and associated counsel commenced an action on behalf of the client. After withdrawal of associate counsel in November 1986, respondent took no steps to answer interrogatories or otherwise pursue the action. Respondent has repeatedly failed to respond to the client's requests that respondent proceed with the action or discuss the case with the client. On one occasion after the client had traveled from Cook, Minnesota to St. Paul to confer with respondent, by appointment, respondent refused to speak with him.

Respondent's conduct with respect to this second count violated Rules 1.3 and 1.4 (lawyer shall keep client reasonably informed), MRPC, and, in addition, an earlier probation order.

It was pointed out earlier that this is the third petition for disciplinary action against this respondent. The earlier proceedings involved similar patterns of neglect and noncooperation. The first petition alleged that respondent, retained in 1969 to commence an action on behalf of his client, had neglected to do so despite the client's repeated requests and then had failed to turn over the file to another lawyer retained by the client. Respondent still held the file when the cause of action died with the client in July 1972. Respondent failed to cooperate with either the district ethics committee or the Board in the investigation of this and another complaint. The petition also alleged a previous censure by the district ethics committee regarding respondent's conduct in the administration of a decedent's estate. Respondent admitted the allegations, asserting in mitigation that he was receiving help with personal problems and his belief, based on his own experience and the advice of his physician, that the misconduct would not be repeated. Based on the parties' stipulation, this court placed respondent on supervised probation by order of August 6, 1974. In 1977, while respondent was on probation, he received a formal letter of warning for client neglect

and failure to respond to the director's inquiries. By order of June 7, 1979 respondent was released from probation.

The second petition, again alleging client neglect and noncooperation in the disciplinary process, was filed June 8, 1984. In February 1981 respondent was retained by two clients to pursue their personal injury claims. For two years respondent failed to respond to inquiries from the clients or an attorney associated with respondent on the claim or from opposing counsel and delayed transfer of the clients' file for more than four months after he had been discharged. Once again, respondent failed to cooperate in the disciplinary process, responding neither to the inquiries of the district ethics committee nor to those of the director and failing to appear at either a scheduled prehearing conference or the panel hearing.

During the pendency of these proceedings a supplementary petition was filed. For a period of about 18 months respondent had failed to prepare proposed findings in a marital dissolution action as directed by the district court, despite the court's repeated requests for compliance.

Once again the respondent admitted the misconduct alleged but asserted, as mitigating circumstances, psychological problems which sometimes affect his ability to cope with the pressures of the practice of law. He presented medical reports stating that he was under a physician's care and that as long as he continued taking recommended medication he could practice law effectively.

For the second time this court accepted the stipulation into which respondent and the director had entered and, by order of November 7, 1985, publicly censured respondent and placed him on three years' supervised probation. *In re Thomas E. Moore,* 376 N.W.2d 678 (Minn.1985).

At the hearing in the present proceedings, respondent contended, as a mitigating circumstance, that he suffered from depression which was being treated by medication. Inasmuch as respondent had not previously taken any part in the proceedings, the record did not support the present mitigation claim. Nevertheless, since evidence of mental illness was presented in earlier disciplinary proceedings and since respondent had not been represented by counsel in the present proceedings until a few days before the hearing, the possibility that transfer to disability inactive status might be appropriate prompted us to grant respondent 10 days in which to obtain psychiatric evaluation and a report for submission to the director. We have been advised that such a report has been submitted to the director but that respondent does not seek disability status.

From the facts admitted and from respondent's disciplinary history, it is apparent not only that respondent's clients have sustained damage as a result of his pattern of neglect but also that the pattern has persisted even while respondent was subject to supervised probation. This court has often pointed out that the purpose of attorney discipline is not to punish, but to protect the public and to deter future misconduct. *See In re Jensen,* 418 N.W.2d 721, 722 (Minn.1988). The nature of the misconduct, the cumulative weight of the disciplinary violations, the harm to the public and to the legal profession all enter into the determination of appropriate discipline. *See In re Schaefer,* 423 N.W.2d 680, 683 (Minn.1988); *In re Gorgos,* 382 N.W.2d 857, 858 (Minn.1986).

Recognizing that evidence presented in earlier disciplinary proceedings will not support a claim of mitigating circumstances in the present proceedings, *In re Howard J. Moore,* 387 N.W.2d 435, 437 (Minn. 1986); *In re Schaefer,* 423 N.W.2d at 684, respondent requests remand to a referee. We decline, however, to extend these proceedings. Even if respondent could demonstrate the existence of mitigating circumstances, the necessity to adequately protect the public from future harm compels us to order suspension. *In re Peck,* 302 N.W.2d 356, 360 (Minn.1981).

It is, therefore, the judgment of this court:

1. Effective immediately respondent Thomas E. Moore is indefinitely suspended from the practice of law.

2. Respondent may not petition for reinstatement until at least 60 days have elapsed from the date of filing of this opinion and, in addition, the following conditions have been met:

a. Respondent shall comply with the requirements of Rule 18, RLPR.

b. Respondent shall submit to the director a current psychological evaluation report, including the examiner's findings and any recommended treatment. Respondent shall also provide documentation of his compliance with any prescribed treatment plan.

c. Upon reinstatement, respondent shall be placed on supervised probation for two years.

IT IS SO ORDERED.